Judge Bryan

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, | NO. CR10-5435RJB |
| Plaintiff, | |
| v. | **GOVERNMENT'S SENTENCING MEMORANDUM** |
| CHRISTOPHER LEWIS, | |
| Defendant. | |

The United States of America, by and through Jenny A. Durkan, United States Attorney for the Western District of Washington, and Ye-Ting Woo and Matthew Thomas, Assistant United States Attorneys for said District, files this Sentencing Memorandum as to Defendant Christopher Lewis. Following a settlement conference before Judge Jones, the parties entered into a binding plea agreement pursuant to Rule 11(c)(1)(C), which allows the Court to either accept or reject the binding sentencing agreement of nine years. *See* Plea Agreement at ¶10. If this Court rejects the sentencing agreement, the Court is required to provide the parties with an opportunity to withdraw from the plea agreement. In the event this Court accepts the binding sentencing recommendation, the government offers the following discussion about the offense conduct, application of sentencing guidelines, and analysis of factors under Title 18,

1 United States Code, Section 3553(a) to assist the Court in understanding the nature and

2 background of this case.

## I. OFFENSE CONDUCT

4     Defendant Christopher Lewis entered a plea of guilty to a Superseding Information

5 charging Human Trafficking, in violation of Title 18, United States Code, Section 1590.

6 This offense involved the defendant financially benefitting from the exploitation of a

7 17-year old woman (referenced as A.L.) for over three months.  The stipulated facts in the

8 Plea Agreement state:

9         a.     In February 2010, AL (female) met the Defendant.  AL was working

10              as a prostitute when she initially met the Defendant.  The Defendant

11              supported himself through the prostitution funds that AL earned.  During

12              this time period, the Defendant and AL were also involved in a boyfriend-

13              girlfriend relationship.

14         b.     The Defendant assisted AL's prostitution activities by transporting

15              AL to her prostitution "dates" and renting motel rooms.

16         c.     The Defendant participated in this scheme and plan with the intent to

17              cause AL to believe that AL would suffer serious harm if she did not

18              perform such labor, i.e. prostitution.

19 CR 65; Plea Agreement at ¶9.

20     The government also concurs with the Probation Office's detailed summary of the

21 Offense Conduct in Paragraphs 12-17 of the Pre-Sentence Report (PSR).  The

22 government notes that the Confidential Source referenced in the PSR at paragraph 16 is

23 the co-defendant's victim, AHF, and that the Confidential Source referenced in PSR at

24 paragraph 17 is a criminal associate of the defendant.

25     The defendant's relationship with AL came to the attention of law enforcement

26 when police officers responded to a citizen call for assistance at the Western Inn Motel in

27 Lakewood, Washington.  Officers contacted HK, a 17-year old female, who was in a

28 motel room with two other females, including AL and an adult female, Shawntay Wilson.

Government's Sentencing Memorandum-2
*United States v. Christopher Lewis*, No. CR10-5435RJB

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

In subsequent interviews of HK, officers learned that she was a runaway and that in February, she had met defendant Christopher Lewis and AL who offered for HK to stay with them.  HK did so and was asked by the defendant to engage in prostitution with AL to earn money.  HK walked the "track" (high prostitution areas) in the Tacoma and Lakewood areas with AL, but she was scared and unfamiliar with prostitution.  AL engaged in acts of prostitution, earning hundreds of dollars on a weekly basis.  She provided some of her earnings to HK for HK to give to the defendant so that the defendant believed that HK was performing sex acts.  While HK was with the defendant and AL, she observed that the defendant was demanding of AL to earn money, and that he intimidated AL by the way that he spoke to her and treated her.  After staying with the defendant and AL for a few weeks, the defendant told HK that she could remain with him or go with another pimp.  HK had met co-defendant Lashad Alexander, through defendant Christopher Lewis, and HK decided to go with co-defendant Alexander.

On the night that the police rescued HK, co-defendant Alexander was with defendant Christopher Lewis, associate Daymon Miller, and co-defendant Alexander's victim, AH.  The police stopped them in a car in the parking lot of the Western Inn motel after they tried to flee from the police.  Law enforcement later learned that HK had been with co-defendant Alexander for several days by that time.

Nearly one month later, AL was contacted by the police again, after an undercover prostitution sting.  AL told officers that defendant Lewis had been her pimp for several months, and she provided her prostitution earnings to him. She explained that she had been with another pimp prior to defendant Lewis.  AL described her relationship with the defendant as a boyfriend-girlfriend relationship.  In subsequent interviews with AL, she explained that she had wanted the defendant to stay with her, that she was at times scared of him and was afraid that he would leave her if she did not continue to engage in prostitution.  AL also stated that she was trying to protect HK by giving her money from AL's prostitution activities, as HK appeared not to know anything about prostitution when she began staying with them, and that HK was reluctant to participate.  AL was

1  required to provide the defendant with all of her prostitution earnings, which amounted to

2  approximately $7,000 over the course of three months.

3      AL has been reunited with her family and is now living a stable life.  AL has

4  expressed a desire to look towards the future and to distance herself from the defendant in

5  an effort to heal from the emotional and physical trauma she endured last year.

6  II.  <u>ADVISORY SENTENCING GUIDELINES</u>

7      The government's advisory sentencing guidelines differs from the calculations

8  proposed by the Probation Office and the defendant.  The advisory guideline range should

9  be 100 to 125 months with a Total Offense Level 24 and a Criminal History Level VI.

10

| | |
|---|---|
| 11 Base Offense Level, USSG 2H4.1(a)(1) | 22 |
| 12 Specific Offense Characteristic, Period of Peonage USSG 2H4.1(a)(1) | +1 |
| 14 Victim Related Adjustment, Vulnerable Victim USSG 3A1.1(b)(1) | +2 |
| 15 Obstruction of Justice, USSG 3C1.1 | +2 |
| 16 <u>Acceptance of Responsibility, USSG 3E1.1</u> | <u>-3</u> |
| **TOTAL OFFENSE LEVEL** | **24** |

18  A.  <u>*Probation's Sentencing Guideline Calculations*</u>

19      As noted in the PSR Sentencing Recommendation, the government provided

20  written objections to the Probation Office with respect to their application of these

21  Guideline Sections:

22  (i)  USSG Section 2H4.1(b)(4)(A), "other felony offense,"

23  (ii)  USSG Section 4B1.1(a), Career Offender, and,

24  (iii)  USSG Section 3E1.1, Acceptance of Responsibility.

25      Although the parties offer an agreed and binding sentencing recommendation, the

26  government offers to the Court its analysis of the application of these Guideline Sections

27  for the Court's benefit.

28

Government's Sentencing Memorandum-4
*United States v. Christopher Lewis*, No. CR10-5435RJB

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

B.      *"Other Felony Offense"*

The government disagrees with the Probation Office in applying the "other felony offense" adjustment in Section 2H4.1(b)(4)(B) as to the related crime of sex trafficking of a child.  The government submits that, in this specific situation, to do so would result in double counting.  *See United States v. Speelman*, 431 F.3d 1226 (9th Cir. 2005); *United States v. Calimlim*, 538 F.3d 706 (7th Cir. 2008).  "The bar on double counting comes into play only if the offense itself necessarily includes the same conduct as the enhancement."  *Calimlim*, 538 F.3d at 716.  This "[bar] is rooted in the fact that the conduct that satisfied an element of the underlying offense is already part of the base offense level.  Thus, if that same conduct also enhances the sentence, the defendant is being punished twice for the same act."*Id*., e.g., *United States v. Tenuto*, 593 F.3d 695, 697 (7th Cir. 2010).  "Impermissible double counting 'occurs where one part of the Guidelines is applied to increase a defendant's punishment on account of a kind of harm that has already been fully accounted for by the application of another part of the Guideline."  *Speelman*, 431 F.3d at 1233.

The elements of the crime of conviction, Human Trafficking, are closely aligned to the crime of Sex Trafficking of a Child.  Both crimes require 1) the recruiting, harboring, transporting, providing, or obtaining of another person, 2) for labor or services, and 3) by means of force, serious harm, or coercion (i.e. by means of a scheme, plan, or pattern intended to cause the person to believe they would suffer serious harm).  In *Calimlim,* the defendants were convicted of forced labor and harboring an alien for financial gain.  The elements of the crimes of forced labor and harboring an alien for financial gain are distinctly different, and neither involves the necessary commission of the other.  Here, there is substantial overlap in conduct for both offenses, and thus, the applicable guideline to the offense of conviction is the appropriate guideline to use.

C.      *Career Offender*

The defendant's criminal history is extensive and serious.  The government does not believe that his criminal history score and level are overstated.  However, strict

application of the Career Offender adjustment does not apply to defendant Lewis and the elements of the crime of conviction, Human Trafficking.  Defendant Lewis satisfies two of the three requirements for the Career Offender adjustment: He is 18 years old, and his has two prior felony convictions.  However, the instant offense of conviction is not a crime of violence.  The elements of the offense of Human Trafficking, as charged in the Superseding Information and as stated in the Plea Agreement, are:

First, the defendant knowingly recruited, harbored, transported, provided, or obtained another person;

Second, the defendant did benefit financially from participation in a venture which has engaged in providing or obtaining labor or services by means of a scheme or plan to cause the other person to believe that if the person did not perform such labor or services, the person would suffer serious harm; and,

Third, the defendant knew or acted in reckless disregard that the providing or obtaining of labor or services was by the means described above.

Section 4B1.2 defines "crime of violence" as "any offense under federal . . . law punishable by imprisonment for a term exceeding one year, that -- (1) has as an element the use, attempted use, or threatened use of physical force against the person of another." Although the use of physical force was involved, as reported by AL, it is not an element of the offense of conviction.

D.    *Acceptance of Responsibility*

The Probation Office asserts that the defendant is ineligible to receive a downward adjustment for acceptance of responsibility due to the application of an upward adjustment for obstruction of justice.  The facts supporting the obstruction of justice adjustment is contained in Paragraphs 20-23 of the PSR, and the government concurs with those facts.

Defendant Lewis has submitted a lengthy statement in an effort to demonstrate acceptance of responsibility.  Despite the harsh manner in which he treated AL, the defendant acknowledges that he can now "see clearly how [his] actions affected the

Government's Sentencing Memorandum-6
*United States v. Christopher Lewis*, No. CR10-5435RJB

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

young woman in this case . ." and  that he sees "the pain that he caused [AL]", and

"apologize[s] most whole-heartedly to [AL] and hopes she will find the peace inside

herself one day to forgive [him]."  The defendant's obstructive conduct occurred when he

was in custody on related state charges, and he attempted to persuade AL to conceal

herself from law enforcement and to refrain from cooperating.  Upon the filing of the

federal indictment against the defendant and his transfer of custody to the Federal

Detention Center in August 2010, the defendant has not otherwise been involved in

obstructive conduct nor has he made any direct or indirect efforts to persuade or

discourage AL or any other witnesses from providing truthful information to law

enforcement.

The government recognizes that application of Sections 3C1.1 and 3E1.1 do not

*ordinarily* apply, yet the Court has the discretion to find reasons for the application of

each section.  Here, the Court may point to the timeliness of defendant's plea, his

sentence agreement of nine years, and the lengthy acceptance of responsibility statement,

as well as the fact that his obstructive behavior occurred prior to the federal indictment, as

reasons warranting the application of both Sections 3C1.1 and 3E1.1.

### III. GOVERNMENT'S SENTENCING RECOMMENDATION

The government exercised its prosecutorial discretion by allowing the defendant to

plead guilty to the offense of Human Trafficking which does not impose a mandatory

minimum term of imprisonment.  The defendant faced either a ten-year or fifteen-year

mandatory minimum term of imprisonment if he had been convicted as charged in the

Second Superseding Indictment.  He also would have faced a significantly higher

guideline range. The parties participated in a settlement conference to achieve the terms

reached in the Plea Agreement.  We did so in an effort to reach an agreement that would

ensure that the defendant acknowledged the severity of his conduct, recognized the

negative impact that such conduct had upon AL, and to punish the defendant for a

sufficient period of time so as to deter him from preying upon other young women in the

future.  By reaching the binding sentencing agreement, the government also considered

Government's Sentencing Memorandum-7
*United States v. Christopher Lewis*, No. CR10-5435RJB

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

that potential impact that testifying in open court could have had on AL. Although AL was cooperative and willing to testify, she was also ready to move on with her life and to create a safe environment for herself so that she did not have to relive the experience of being exploited and mistreated. As the government has experienced with other victims of trafficking who have had to face their perpetrators in open court, it is an emotionally and physically demanding process for victims. In its negotiations with defendant Lewis, the government took into these factors, along with the need to seek an adequate and appropriate sanction for the defendant.

As agreed, the government recommends a sentence of nine years of imprisonment. The government agrees that the defendant is entitled to credit for time served while in Pierce County custody, immediately preceding his transfer of custody to the Federal Detention Center at SeaTac. The government further recommends a period of supervision of three years to follow the term of imprisonment, along with the standard and special conditions as suggested by the Probation Office. The defendant has agreed to pay restitution in the amount of $7,000.00 to AL, and the government agrees with this amount. A mandatory assessment of $100 is required.

The government analyzed the factors under Title 18, United States Code, Section 3553(e) in deciding that a sentence of nine years is a sentence that is sufficient but not greater than necessary to meet the goals and purposes of sentencing.

Defendant Lewis has a lengthy criminal history which includes convictions for assault and other similar crimes since he was a juvenile. These are the skills that he learned as a teenage boy and young man with which to control women and to get what he wanted. Defendant Lewis was able to take advantage of a teenage girl who was homeless and looking for and needing emotional and physical acceptance. Unlike the defendant, AL did not have a criminal history and although she had been engaging in prostitution under the direction of another pimp, she did not have the history or the experience that would have otherwise caused her to commit other crimes. Defendant Lewis was able to

Government's Sentencing Memorandum-8
*United States v. Christopher Lewis*, No. CR10-5435RJB

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

1    manipulate his relationship with AL, and her desire for acceptance, to financially benefit

2    from it.

3         A sentence of nine years is in alignment with similarly situated defendants who

4    have been convicted of Human Trafficking in this District, and who preyed upon teenage

5    girls and young women to financially benefit from their prostitution activities.

6    Specifically, defendants Toda Robinson (CR09-129TSZ), Marquin Thompson (CR09-

7    122JCC), and Mark McGlover (CR06-393JLR) received sentences ranging from 6 to 8

8    years.

9         The government also agrees with the Probation Office that the defendant is highly

10   likely to re-offend upon release from imprisonment.  Nine years of imprisonment is a

11   sentence that will ensure that the defendant refrain from committing crimes of violence

12   against teenage females and young women, to protect others from his conduct, and to

13   allow the defendant an opportunity in prison to acquire new skills and strategies for living

14   a crime-free life upon his release from prison.

15                              IV.  <u>WAIVER OF APPEAL</u>

16        Pursuant to the parties's Plea Agreement, the defendant has agreed to waive his

17   right to appeal the conviction and sentence if this Court imposes a sentence within the

18   agreed sentencing range.  The government respectfully requests this Court to remind the

19   defendant, at sentencing, of his waiver of appeal.

20        DATED this 13th day of June, 2011.

21

22                                        Respectfully submitted,

23                                        JENNY A. DURKAN
                                          United States Attorney

24

25                                        <u>*s/YE-TING WOO*</u>
                                          YE-TING WOO

26                                        Assistant United States Attorney
                                          700 Stewart Street, Suite 5220

27                                        Seattle, WA 98101-1271
                                          Telephone:   (206) 553-2268

28                                        Fax:         (206) 553-0755
                                          E-mail:      Ye-Ting.Woo@usdoj.gov

1

CERTIFICATE OF SERVICE

2

I hereby certify that on June 13, 2011, I electronically filed the foregoing with the

3

Clerk of Court using the CM/ECF system which will send notification of such filing to

4

the attorney(s) of record for the defendant(s).  I hereby certify that I have served the

5

attorney(s) of record for the defendant(s) that are non CM/ECF participants via telefax.

6

7

s/ *Lisa Royack*

8

LISA ROYACK
Legal Assistant

9

United States Attorney's Office
1201 Pacific Avenue, Suite 700
Tacoma, Washington 98402

10

Telephone: (253) 428-3813
Fax: (253) 428-3826

11

E-mail: Lisa.Royack@usdoj.gov

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Government's Sentencing Memorandum-10
*United States v. Christopher Lewis,* No. CR10-5435RJB

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970